cetera. Hang on one minute, counsel, and let them get situated over there. All right, sir, you're on. May it please the court. The First Amendment should be enough to protect freedom of speech and academic freedom. The institution of tenure should not be needed to protect those constitutional rights. The First Amendment should be enough to protect against retaliation. Because former Dean Nail retaliated against Dr. Wetherbe for exercising his free speech rights on the issue of tenure, he asked this court to reverse the judgment of the trial court and remand this case for further proceedings. Dr. Wetherbe is a distinguished scholar who has been a vocal participant in the debate on tenure for most of his academic career. He has been invited to write on this subject by outlets such as Business Week, the Financial Times, and the Huffington Post. And his advocacy on the tenure issue has been covered by other media outlets, such as the Wall Street Journal. Dr. Wetherbe asked the court to understand the irony of the situation. Tenure is supposed to protect, supposedly, academic freedom. Dr. Wetherbe has been awarded tenure and has respectfully resigned it four different times in his academic career at different universities where he has served. He has effectively served as a full professor without tenure for the last 25 years. He was granted and he respectfully declined tenure at Texas Tech. Having spoken out against tenure, he has now been subject to retaliation. As noted in the pleadings and the briefing, Dr. Wetherbe's motives here in this litigation are not financial. He has stated that any damages that he would receive from this litigation would be awarded to student scholarships. His motivation is to establish that freedom of speech should provide academic freedom. Dr. Wetherbe is simply asking for his day in court to accomplish this. His position on tenure, interestingly, happens to be the majority opinion of public opinion as well. Dr. Wetherbe is an insider in higher education who has acknowledged the abuses of tenure and this is a matter of public concern. The district court dismissed the case based on one fatal flaw. The court found that the issue of tenure as a matter of law is not a matter of public concern. That is clearly erroneous and so this court should reverse and remand this case back to the trial court. The fact that several media outlets have, in fact, invited Dr. Wetherbe to publish articles on the abolition of tenure should be sufficient, without more, to establish that his speech addresses a matter of public concern, per the United States Supreme Court holding in 2014 in Lane v. Franks. In our pleadings, we also note that there were other publications by other authors before Dr. Wetherbe's speech on this issue of tenure as a matter of public concern and we've cited the court to the October 2012 article in the Texas Monthly Magazine entitled, Storming the Ivory Tower, which talks about academic reforms including tenure. We've also cited in our pleadings to an August 2012 Wall Street Journal article. We cite it at paragraph 17 of our First Amendment complaint. Again, that is another article in a national news outlet that discusses tenure that was written by other authors, not even Dr. Wetherbe, which predate the retaliation here. And so as a matter of law, tenure is a matter of public concern and therefore should be protected under the First Amendment. As Dr. Wetherbe opined in a December 2012 article, again that he was invited to write for the Huffington Post, he said, quote, outside the ivory tower, tenure is not viewed well by business leaders and taxpayers. They resent that underperforming faculty have unwarranted job security at a time when the Next, in his chronological order of publishings on this issue of tenure, in March of 2013, the Harvard Business Review published an article authored by Professor Wetherbe entitled, quote, It's Time for Tenure to Lose Tenure, close quote. As the article's title implies, he's talking about tenure as an institution and debating its merits. About two months after that Harvard Business Review article was published, former Dean Lance Nail terminated Dr. Wetherbe's position as the Associate Dean for Outreach in a very public and humiliating manner. He also fired Dr. Wetherbe from the Leadership Council, the Coordinating Council, and the Chief Executive Roundtable at the Rawls College of Business, where Dr. Wetherbe had served for distinction for years before Dean Nail came on the scene. Shortly after that, more retaliation ensued. In July of 2013, Dr. Wetherbe was removed as a professor from a top-rated MBA communication course that he had taught 36 times previously. In July 2013, the Financial Times published a piece that they invited Dr. Wetherbe to write, entitled, quote, Tenure System Stifles Business Schools, close quote. Again, Dr. Wetherbe was talking about the issues of tenure generally in that article. And then about a month later, more retaliation was visited upon him. Dr. Wetherbe was revoked as an advisor to the MBA Student Association, and his emeritus  post. Dr. Wetherbe pled a causal link between his protected speech and the unconstitutional retaliation. Next in the chronological chain, in August of 2013, Dean Nail told Dr. Wetherbe, I don't want to be in the Wall Street Journal anymore. The Wall Street Journal article that Dean Nail referred to talked about Dr. Wetherbe's views about tenure generally. There is evidence, therefore, that then-Dean Nail had knowledge of Dr. Wetherbe's speech, didn't like it, and there's temporal proximity between the retaliatory actions, the smoking gun of his comments, and the retaliation that happened. In December of 2013, next in the chronological order, Dr. Wetherbe had a grant from the Best Buy Corporation revoked from him. He had worked years to establish that relationship with that corporation in the business school. It was a half-million-dollar grant. Dr. Wetherbe was in line to be able to use $50,000 of that grant money to help support his research. Dean Nail yanked that grant and then inexplicably returned it to Best Buy, even though the entire grant had been previously approved. There's no other way to explain that except for retaliation. Next, in March of 2015, Professor Wetherbe was assigned a 50% increase in teaching load. He was effectively given the teaching load of someone who was not on a tenured position at all. Tenured professors have a lower teaching load so they can spend more time doing their academic research. That was an effective demotion. Again, Professor Wetherbe was operating as a full professor without tenure, and he was given a demotion in terms of increasing his teaching load, which made his scholarly research more difficult to do. Speech involves a matter of public concern when it can be fairly considered as relating to any matter of political, social, or other concern of the community, or when it is a subject of a legitimate news interest. That is, subject of a general interest and value and concern to the public. That's what the United States Supreme Court held recently in Lane v. Franks in 2014. The fact that the Financial Times, Business Week, and the Huffington Post invited, they sought out Dr. Wetherbe and said, we'd like to get some comment from you on this national issue of tenure. The fact that those national media outlets invited his comment is proof that Dr. Wetherbe was contributing to a national debate and that his speech was the subject of a legitimate news interest, thereby satisfying the United States Supreme Court's test for protection of free speech as a matter of public concern. The Supreme Court has also held that, quote, there is considerable value in encouraging rather than inhibiting speech by public employees, because government employees are often in the best position to know what ails the agencies for which they work. The court also held in a different case that, quote, the interest at stake is as much the public's interest in receiving informed opinion as it is the employee's own right to disseminate it. Again, the mere fact that there were two other publications in the national genre that we had that were published shows that the district judge's reasoning was infirm. Tenure is indeed a matter of public opinion and therefore is worthy of First Amendment protection. That was the sole basis the court essentially made its decision in granting the motion to dismiss. I'd assume for the sake of the discussion, you know, you've made your case in terms of public concern, shift gears, if you will, to . . . there at least was within the scheme of all this that some of the claims raised here were barred by collateral estoppel. This case has been to the Fifth Circuit before, it's been down, da-da-da-da-da-da, so putting aside, not dismissing, but we got you on the public concern. What about the responses about these various and sundry other claims and help us with understanding whether or not they are barred or whether they're still alive because of the other arguments that you made? Yes, Chief Joe Stewart. This second case deals with a separate second and later fact pattern of retaliation. So Dr. Weatherby had hoped that once this new dean came in, he could just go back to his job and just do his job, and that didn't happen. So these claims that we're suing on in this instant lawsuit arose after the filing of his last complaint in the prior lawsuit. These are claims that arose after June 17, 2013. So the claims about the replacement, being replaced as the MBA student advisor, revocation of emeritus status on the advisory council, yanking of the grant money, denial of travel reimbursement, taking away his endowed professorship, and demotion to a professor of practice, all these claims arose after June 17, 2013. The other side wants to re-litigate the past, and we're not here to do that. The claims in this lawsuit deal with new separate retaliation after Dean Nail became the dean, and so race judicata and collateral estoppel do not bar those claims. In the prior opinion by the Fifth Circuit in the first case, the court found that Dr. Weatherby had not alleged sufficient facts to show that the defendant was aware of his speech. That certainly isn't the case here. We have pled evidence that Dean Nail was indeed aware of the speech. In fact, he complained about the speech to Dr. Weatherby. So again, that was an issue that the Fifth Circuit raised in the first case. That isn't a problem here. There was also a question in the Fifth Circuit's mind about whether there was proof of publication of this issue on tenure, so that there's a nexus between actual speech and the retaliation. And again here, that's not the issue either. We have pled a detailed chart showing in chronological fashion the different speech outlets where Dr. Weatherby published his protected speech and the retaliation to show the close temporal proximity. And at footnote three of our main brief, footnote three of our principal brief, we show the several articles that Dr. Weatherby wrote on the issue of tenure generally that didn't talk about his employment conditions. Dr. Weatherby is a leading thought actor on this issue, and the Wall Street Journal is not going to ask him, Harvard Business Review is not going to ask people like that to just whine about their own job conditions. They came to Dr. Weatherby because he's a leading thought proponent on this issue. And so this speech is not just speech about his own job conditions, it's speech about the issue of tenure generally. And because that speech is a matter of public concern, the district court erred, and we would ask that this court reverse and remand this case back to the trial court for further proceedings. I look forward to the rebuttal. Thank you. All right. Thank you, sir. All right. Mr. Murphy, you're up. Thank you, Chief Judge Stewart, and may it please the court. Once again, Weatherby seeks the protections of the First Amendment to set his own job conditions. And once again, this court should reject that attempt and dismiss this lawsuit. In his reply brief and just now, Weatherby has conceded that collateral estoppel and res judicata bar all of his retaliation claims, except for those that arose after his complaint was filed in his first lawsuit, which was on June 17, 2013. So the only remaining issue in this appeal is whether Weatherby pled sufficient facts to establish that his publications plausibly motivated the adverse employment actions that he made in 2013. The answer to that question is no. Despite extensive discovery, Weatherby did not allege any adverse employment action that was motivated by his publications or that Nail was even aware of those publications. In fact, he specifically alleged other motives for the adverse actions. This court should affirm. Weatherby's publication-based claim that he raises is the sort of naked assertion devoid of further factual enhancement that Iqbal said will not suffice. He's at the pleading stage, though, my goodness. You know, he's at the pleading stage, you know, you've got umpteen pages of prior opinions from here, all this stuff, you know, that's been written, I mean, Lubbock's not that big, I mean, about all of this, et cetera, et cetera, I mean, notwithstanding Iqbal, et cetera. We are at the pleading stage, so it's a little bit, you know, is it perfect pleading, you know, could there be more, but, I mean, we've got the federal rules require notice pleading, so I mean, if we're here on summary judgment, then, you know, like, okay, what's the record show? But it's pleading, so with two rounds of litigation, all that's going on, all this back and forth and so on and so forth, I mean, is that what Iqbal is saying, that he hasn't even plausibly made a connection, I mean, is the complaint so bare as compared to other cases when we look on Iqbal that just kind of nothing, there's no way to know, and no possible way to connect it to a claim. He makes it in the framework of First Amendment, public concern here, I mean, is this really kind of as an outlier, bare bone, I mean, I understand the efficacy of the argument, but I'm just saying, should we just not even pay attention to, you know, sort of what's going on? It haven't been up here before, the court before said it was naked, it's back, he repleads, so does that count for nothing? Well, Chief Justice, I think, you know, you do have to assume the truth of the facts that are alleged, but the problem in this case is that there are no facts alleged that would plausibly support causation in this case. The only thing, and this is pointed out in, or conceded in Weatherby's reply brief, the only thing he points to for this fatal causation problem is the chart, and he says, and I quote in his reply brief, that the chart raises a, quote, reasonable expectation that discovery will reveal evidence, end quote, and that's on page two of his reply. The problem is, his complaint was filed after extensive discovery, and this is, as you mentioned, this is his second round, and there's also other state litigation surrounding this case, so there's really no excuse for him not to plead the facts necessary to show causation in this case. The chart that he produces in his amended complaint, and he references in his opening argument, does not create a plausible inference of causation for several reasons. The first is, the chart makes no allegation of causation. It merely charts the temporal proximity of certain publications, many of which were not authored by Weatherby, and certain alleged retaliatory actions. Second, he alleged many motives for the retaliatory actions that he alleges, including his anti-tenure views, his original lawsuit, and his rejection of tenure, and he alleged those specifically. In fact, of the claims that are not barred by res judicata, four of them, he alleged, were, quote, because of his anti-tenure views and his lawsuit, end quote. That's at ROA 339. So there are only two claims that are not barred by res judicata that he didn't specifically allege were motivated by something besides the publications, and those are being replaced as a faculty advisor to an MBA association, and the non-extension of the Stevenson chair. And for those two claims, he makes no allegation of causation whatsoever. Now so what we have here is, we have simply a bare allegation with temporal proximity presented without any factual connection between the alleged retaliatory action and the publications.  Was it, I forgot his title, Mr. Nail? What about his statement that he didn't enjoy or he didn't want him to have his name mentioned in the Wall Street Journal or whatever articles Professor Weatherby was writing about? Judge Dennis, that is not any evidence of causation in this case for a few reasons. The reference is to this Wall Street Journal blog post, and in that blog post, it was not written by Weatherby to begin with. The blog post was primarily about his first lawsuit, and the blog post quoted an email by Nail, which is why Nail told Weatherby, I don't want to do any more emails because I don't want to end up in the Wall Street Journal again. It was only a reference to that blog post that Weatherby did not write. Furthermore, Weatherby makes no allegation that that reference or even that knowledge of that blog post is attributable to knowledge of his other publications or that that blog post motivated any retaliatory action. It's simply a reference to this blog post. And in fact, he implies that the statement that he doesn't want to do any more emails was somehow a retaliatory action in the chart. But going back to the chart in temporal proximity, this court held in another First Amendment retaliation case, the Beatty v. Madison County School District case, that timing alone, I'll quote, timing alone does not create an inference, end quote, of retaliation. And that's what we have here. We have timing alone. And when you overlay the specific allegations of motive that are not related to his publications, including his anti-tenure views, his original lawsuit, and his rejection of tenure, there's no reason to think that mere temporal proximity would make it more likely that these publications were the cause for these alleged adverse actions than any of the specifically alleged motives that he also alleges throughout his lawsuit. At most, temporal proximity indicates that causation may be possible or is consistent with liability, not that it's plausible, which is the minimum under Iqbal and Twombly. So to summarize, Weatherby failed to meet his basic pleadings requirement in this case. After extensive discovery, he failed to allege causation, and he failed to allege facts that would support causation. And just to follow up on one point that Weatherby noted in his reply brief, that we raised this for the first time in this court, that is actually incorrect. At ROA 715, we alleged in our brief supporting the motion to dismiss, quote, Weatherby's speech of which defendants were aware was not protected, and he therefore cannot state a claim for free speech retaliation. For all of these reasons, the court should affirm. All right. Thank you, sir. All right. Mr. Boussos, counsel says you had 100 boxes of discovery, and you had all kind of information, and despite all that, you didn't put it in the pleadings. What do you say? May it please the court, I will quote from the pleadings to the court. Quoting from Dr. Weatherby's live pleading, which is docket number 11 at the trial court below, at paragraph 87, Dr. Weatherby states, quote, in fact, comma, on August 5th, 2013, when Dr. Weatherby asked Nail in their last in-person meeting if he would document his actions, Dean Nail stated that he would not send any more emails because he did not want his actions to be profiled again in the Wall Street Journal, i.e., May 22nd, 2013, which he was still angry about. Further, in other detail about the pled nexus, at paragraph 104 of the complaint, it adverse, quote, evidence that defendants retaliated against Dr. Weatherby because of his anti-tenure views, and his lawsuit include but is not limited to. Again, it's clear that the nexus has been pled between the expression of Dr. Weatherby's anti-tenure speech and the retaliation. That's not a mystery in these pleadings. Further, at paragraph 107 of the pleading, Dr. Weatherby pled, quote, Dean Nail disagreed with Dr. Weatherby's anti-tenure conduct and or speech, which legally constitutes speech and is considered to be a threat to the institution of tenure, which is the serious, which is the subject of serious public debate at this time. So I've just, in just a moment, put a handful of provisions where Dr. Weatherby made it very clear that he was retaliated against, not for some amorphous reason, but because of retaliation for his views on tenure, his speech on tenure. So the pleadings are clear, and they support the relief. Again, looking at the court's order, though, below, the district court stopped his analysis at the matter of public concern stage. And to further address this issue of are the pleadings sufficient, as Chief Judge Stewart mentioned, the Iqbal-Twombly pleading standard isn't impossible, and it only requires that the pleadings, quote, raise a reasonable expectation that discovery will reveal evidence of the cause of action. That's from Twombly. The court also said in Twombly that, quote, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely. So Dr. Weatherby met his pleading standard under Iqbal and Twombly. This is more than just mere notice pleading under the rules. And a complaint attacked under Rule 12b-6 does not need detailed factual allegations. Again, that's the Supreme Court's language in Twombly. So Dr. Weatherby clearly pleaded that he engaged in protected speech, that Dean Nail was aware of at least one of these publications in the Wall Street Journal, again, where Dr. Weatherby was talking about the issue of tenure generally, and he pled very close temporal proximity between the speech and the retaliatory actions. And therefore, there's ample pleading under Iqbal and Twombly to sustain Dr. Weatherby's claims. But this is employment. Without him being tenured, his employment contract just covers sort of the basics? Yes, Your Honor. He has an employment contract with Texas Tech. It's a year-to-year contract. And again, it's a contract for full professorship without tenure. So his employment is the subject of a contract outside of the tenure. You agree that Texas Tech is entitled to sovereign immunity in this case? Yes, yes. But Dean Nail's actions in their ex parte young can give liability. So that's the proper defendant there, Dr. Nail. And Dr. Weatherby can properly bring this action under Section 1983 for the actions of Dean Nail. And I want to remind the Court about what the defendants did waive. And we do argue still that this argument of a lack of causal causation wasn't set forth properly in the court below. For those reasons, I see my time is up. Dr. Weatherby, respect the request that this court reverse the judgment of the district court below and remand this case for further proceedings. Thank you. All right, thank you to both sides. The case will be submitted.